UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Michael J. Timmis,

    Plaintiff,

v.                                                            Case No. 12-10232

Boston Scientific Corporation, and                 Honorable Sean F. Cox
Scott Berens,

    Defendants.
_____/

## OPINION & ORDER

Plaintiff Michael Timmis ("Plaintiff") filed this action against his former employer, Boston Scientific Corporation, and his former Supervisor, Scott Berens (together, "Defendants"), alleging age discrimination in violation of the Michigan Elliot-Larsen Civil Rights Act and alleging other state-law claims. Defendants removed this action to this Court on the basis of diversity jurisdiction. The matter is currently before the Court on Plaintiff's Motion to Remand to Wayne County Circuit Court and Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. The parties have briefed the issues and the Court heard oral argument on June 7, 2012.

For the reasons set forth below, the Court concludes that Plaintiff fraudulently joined Defendant Scott Berens as a non-diverse party to this action. The Court therefore shall DENY Plaintiffs' Motion to Remand. The Court shall also GRANT Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment because Plaintiff's claims are either time-barred, or he has failed to state a claim upon which relief can be granted.

1

BACKGROUND

Plaintiff filed this action on December 16, 2011, in Wayne County Circuit Court. Plaintiff's Complaint asserts the following counts: Count I – Age Discrimination in Violation of the Michigan Elliot-Larsen Civil Rights Act (Boston Scientific Corporation and Scott Berens); Count II – Tortious Interference with the Business Relationship (Scott Berens); Count III – Fraud and Misrepresentation (Scott Berens); Count IV – Breach of Implied Contract of Employment (Boston Scientific and Scott Berens).

Defendants subsequently removed this action to this Court on January 18, 2012, asserting that Plaintiff fraudulently joined Defendant Scott Berens ("Berens") in an effort to defeat complete diversity. On January 25, 2012, Defendants filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. (Def. Mtn., Doc. Entry No. 7). On February 10, 2012, Plaintiff filed a Motion to Remand to Wayne County Circuit Court. (Remand Mtn., Doc. Entry No. 9).

The following material facts are gleaned from the pleadings, briefs, and evidence submitted by the parties.

Plaintiff, a Michigan resident, has been in the business of selling cardiac rhythm management devices (pacemakers) for approximately thirty years. On August 1, 2005, Plaintiff accepted a sales position with Guidant Sales Corporation. (Remand Mtn. at 1). Plaintiff was 46 years old at the time of his hire.

Defendant Boston Scientific Corporation ("Boston Scientific") is a Delaware corporation in the business of developing, manufacturing, distributing, and selling pacemakers. (Mtn. to Dismiss at 1). In January 2006, Boston Scientific acquired Guidant Sales Corporation and

Plaintiff became a Boston Scientific employee. Plaintiff's direct supervisor was Detroit Regional Manager Brad Townsend ("Townsend"). (*Id*. at 2). Townsend reported directly to Berens, a Michigan resident, who served as the Area Director for Boston Scientific's Great Lakes Area. (*Id*.).

During Plaintiff's employment with Boston Scientific, Plaintiff was a leading salesperson for the company, receiving a number of internal sales awards as recently as 2007 and often earning the praise of Boston Scientific executives. (*See* Timmis Affidavit, Remand Mtn., Ex. C).

At a regional meeting in 2008, while Plaintiff was in the midst of an exceptional sales year, Plaintiff contends that Berens asked Plaintiff, "How long do you really want to do this?" and stated, "You had a good run." (Timmis Affidavit at ¶ 8).

On October 15, 2008, Plaintiff received a written warning from Townsend dated October 10, 2008. (10/10/2008 Warning, Remand Mtn., Ex. C). The written warning related to four alleged inventory losses by Plaintiff and stated, "Additional occurrences of unacceptable field inventory management performance could subject you to further disciplinary action up to and including termination of employment." (*Id*.). Plaintiff located two of the products listed in the written warning, but was required to reimburse Boston Scientific $500 for the remaining two products. (Timmis Affidavit at ¶ 10). Plaintiff did not have any additional inventory losses after Townsend issued the written warning to Plaintiff. (*Id*. at ¶ 11).

At a meeting between Plaintiff, Townsend, and Berens, Berens notified Plaintiff that Boston Scientific was terminating his employment "for failing to display minimally acceptable levels of administrative job responsibilities and unprofessional behavior, including Plaintiff's failure to manage his inventory of [Boston Scientific] products." (Berens Affidavit at ¶ 7, Mtn.

to Dismiss, Ex. A).  Plaintiff was 50 years old at the time of his termination.

The next day, on December 3, 2008, Plaintiff received a memorandum from Townsend confirming his termination.  The memorandum stated:

> As discussed in the meeting on Dec. 2, 2008, your employment with Boston Scientific CRM Sales Corporation is being terminated effective December 16, 2008 as the result of your failure to display minimally acceptable levels of administrative job responsibilities and unprofessional behavior.
>
> Per the terms of the Employment Agreement effective August 1, 2005, you agreed that we could terminate your employment for any reason upon two weeks notice.  The meeting yesterday serves as that two weeks notice.  During this two weeks notice period you will continue to receive your salary and guarantee, but you are not to represent Boston Scientific in any way.  There should be no interaction between you and other Boston Scientific employees other than me, Scott Berens or Human Resources.  Additionally, you should have no contact with any Boston Scientific customers.
>
> Any outstanding expenses will be reimbursed upon approval.  This is contingent upon a successful reconciliation of pay and inventory if appropriate.  Any Boston Scientific property should be returned to the Detroit Sales office prior to 12:00 p.m. on December 5, 2008. . .

(12/3/2008 Memo, Mtn. to Dismiss, Ex. D).

Also on December 3, 2008, Boston Scientific terminated Plaintiff's access to its computer network and its phone system.  (Brown Affidavit at ¶¶ 4-5, Mtn. To Dismiss, Ex. C). Although Plaintiff continued to be employed by Boston Scientific until December 16, 2008, Plaintiff did not actually work as salesperson after December 2, 2008.

On December 8, 2008, Plaintiff received another memorandum from Townsend regarding the return of any Boston Scientific property in the possession of Plaintiff.  In the memorandum, Townsend stated:

> Michael, we are not able to process your final payments without a

4

>successful reconciliation of inventory. Please contact me no later than end of business (5:00 p.m.) Wednesday, Dec. 10, 2008 to make arrangements for collection or you may return the property to the Detroit office by the same deadline. You are currently still employed by Boston Scientific and it is my expectation that you immediately comply with this request.

(12/8/2008 Memo, Remand Mtn., Ex. C).

Shortly after Plaintiff's termination from Boston Scientific, Plaintiff became employed in a similar capacity with St. Jude Medical.

## ANALYSIS

I.  Plaintiff's Motion to Remand

In their notice of removal, Defendants' assert that "Plaintiff's decision to name Berens as a defendant is fraudulent because Plaintiff cannot state a colorable claim against Berens upon which relief can be granted." (Notice of Removal at 1). Plaintiff, however, maintains that this Court does not have jurisdiction over this action because no federal question exists and the parties are not completely diverse.

In order for a federal court to have jurisdiction over an action between diverse parties, complete diversity must exist "at the time that the case is commenced and at the time that the notice of removal is filed." *Jerome–Duncan, Inc. v. Auto–By–Tel, L.L.C.*, 176 F.3d 904, 907 (6th Cir. 1999). "Fraudulent joinder occurs when the non-removing party joins a party against whom there is no colorable cause of action." *Saginaw Hous. Comm'n v. Bannum, Inc.*, 576 F.3d 620, 624 (6th Cir. 2009). When determining whether a non-diverse party has been fraudulently joined, the Court does not consider the non-moving party's motive for joining the non-diverse party.

The Sixth Circuit has articulated the following burden on removing parties:

> To prove fraudulent joinder, the removing party must present sufficient evidence that a plaintiff could not have established a cause of action against non-diverse defendants under state law. However, if there is a colorable basis for predicting that a plaintiff may recover against non-diverse defendants, this Court must remand the action to state court. The district court must resolve "all disputed questions of fact and ambiguities in the controlling. . . state law in favor of the non removing party." All doubts as to the propriety of removal are resolved in favor of remand.

*Coyne v. American Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999) (quoting *Alexander v. Electronic Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994) (internal citations omitted).

The Sixth Circuit has adopted the Fifth Circuit's standard for considering evidence in support of a party's claim of fraudulent joinder. *Walker v. Philip Morris USA, Inc.*, 443 Fed.Appx. 946, 951 (6th Cir. 2011).

> First, even if the district court "pierces the pleadings" to consider summary-judgment-type evidence (such as depositions, affidavits, etc.), the proper standard for evaluating that evidence remains akin to that of a Rule 12(b)(6) motion to dismiss, and is arguably even more deferential. Second, any contested issues of fact must be construed in the plaintiff's favor.

*Id*. at 954.

As discussed below, in considering the evidence submitted by the parties and construing any issues of fact in Plaintiff's favor, the Court finds that Plaintiff has failed to state a colorable cause of action against Berens. Accordingly, the Court finds that Defendant Scott Berens has been fraudulently joined as a non-diverse party by Plaintiff, and this Court can retain jurisdiction over this action.

    A.    <u>Plaintiff's Age Discrimination Claim:</u>

In Count I of Plaintiff's Complaint, Plaintiff alleges age discrimination against Berens in violation of Michigan's Elliot-Larsen Civil Rights Act ("ELCRA"). Defendants' only challenge

to Plaintiff's ELCRA claim is that it is barred by ELCRA's three-year statute of limitations.

Under M.C.L. 37.2202(1)(a), an employer cannot discharge or otherwise discriminate against an employee because of the employee's age. Moreover, Michigan law permits a plaintiff to bring an ELCRA action against a former supervisor. *Elsovic v. Ford Motor Co.*, 427 Mich. 408 (2005). A plaintiff must file his or her age discrimination claim within three years of the date the plaintiff's cause of action accrues. *Garg v. Macomb Cnty. Cmty. Health Servs.*, 472 Mich. 263, 696 (2005).

Plaintiff filed his claim on December 16, 2011. The major point of contention between the parties is the date on which Plaintiff's ELCRA claim accrued. Defendants ask this Court to apply the "last day worked" rule and contend that the statute of limitations on Plaintiff's ELCRA claims began to run on December 2, 2008 – the date that Defendants assert Plaintiff was discharged. Plaintiff, however, contends that he was discharged on December 16, 2008, making his ELCRA claim fall within the three-year statute of limitations.

Both parties rely on *Parker v. Cadillac Cage Textron, Inc.*, 214 Mich. App. 288 (1995), and its application of the "last day worked" rule in ELCRA actions. In *Parker*, the plaintiffs brought ELCRA claims against their former employer. On December 3, 1990, the plaintiffs received written notice from their employer that they were going to be laid off. *Id*. at 289. The last day that the plaintiffs actually worked was December 21, 1990. *Id*. The plaintiffs' "Employment Change of Status" forms indicated that their "effective date of separation" was January 7, 1991. *Id*. The plaintiffs filed their complaint on January 7, 1994. but the trial court dismissed plaintiffs' claims for failing to file their complaint within ECLRA's three-year statute of limitations period. *Id*. The Court of Appeals affirmed the trial court's judgment, holding that

7

"[a] claim of discriminatory discharge accrues on the date the plaintiff is discharged." *Id*. at 290. The *Parker* court also held that "[t]he last day worked is the date of discharge." The court stated, "Despite the fact that January 7, 1991, *may have been* plaintiffs' 'effective' date of separation, it is undisputed that the last day they actually worked was December 21, 1990." *Id*. Because the last day the plaintiffs worked was on December 21, 1990, plaintiffs' complaint filed on January 7, 1994 was barred by the three-year statute of limitations. *Id*.

In applying the "last day worked" rule, the Michigan Court of Appeals has more recently held:

> [I]f a discharge has yet to occur, it cannot be said that the last day worked represents the discharge date. Simply put, a claim for discriminatory discharge cannot arise until a claimant has been discharged. Accordingly, the "last day worked" cannot represent the date of discharge, as held in *Parker*, where a claimant's last day actually worked precedes the discharge.

*Mortimer v. Alpena County Probate Court*, No. 290958, 2010 WL 2077147 at *2 (May 25, 2010).

Defendants assert that Plaintiff was discharged on December 2, 2008 – the date that Defendants notified Plaintiff of his termination. In support of this position, Defendants cite the December 2, 2008 memorandum from Townsend to Plaintiff. That memorandum, which summarized the meeting between Plaintiff, Townsend, and Berens the day before, confirmed to Plaintiff that his employment was being terminated effective December 16, 2008. (*Id*.). The memorandum also indicated that, as of December 2, 2008, Plaintiff was to have no interaction with Boston Scientific customers or Boston Scientific employees, except for Townsend, Berens, and Human Resources. Defendants also note that Plaintiff's access to Boston Scientific's computer network and voicemail was terminated on December 3, 2009. (Brown Affidavit at ¶¶

8

4-5). Defendants therefore contend that Plaintiff did not actually work after December 2, 2008, and the "last day worked" rule dictates that Plaintiff was discharged on December 2, 2008.

In response, Plaintiff states that his discharge was not effective until December 16, 2008, as stated in the December 2, 2008 memorandum received from Townsend. Plaintiff also relies on the fact that the non-compete agreement did not take into effect until December 16, 2008 – the date of Plaintiff's effective discharge. Additionally, Plaintiff states that "Boston Scientific made continuing demands and exerted continuing control over the Plaintiff" by demanding that he account for company property and reconcile inventory. (Remand Mtn. at 12).

Plaintiff's contention that he continued to be employed by and was "under the control" of Boston Scientific is irrelevant to the Court's determination of when Plaintiff was actually discharged. Michigan case law is clear that an employee's last day worked is "irrespective of the 'effective' date of termination recorded by their employer." *Wilkerson v. University of Michigan*, No. 265220, 2006 WL 2061397 at *3 (Mich. App. 2006). Rather, the cause of action begins to accrue when the Defendant causes the discriminatory adverse action to occur.

This case is analogous to *Wilkerson*. In *Wilkerson*, the plaintiff, a physician employed by a medical center, was notified that her position would be eliminated at the end of 2000. *Id*. at *1. The plaintiff worked her last shift on December 17, 2000. *Id*. at *2. Plaintiff did not file her discrimination claim until December 19, 2003. *Id*. The court rejected the plaintiff's assertion that "she was available to work for the remainder of the month," and therefore was not discharged until the end of the month. The court found that, although Plaintiff was still employed by the medical center until the end of the year, the documentary evidence did not "establish that there was any mutual agreement that she was 'on call' during this time, or

9

otherwise committed to work if needed." *Id*. at * 4. Therefore, although the plaintiffs "effective" discharge date was December 31, 2000, the "plaintiff was already subjected to an alleged discriminatory/retaliatory termination, so her cause of action naturally accrued on her last day of work, December 17, 2000." *Id*. The plaintiff's December 19, 2003 complaint was time-barred.

Like the plaintiff in *Wilkerson*, Plaintiff's "effective" date of discharge may have been December 16, 2008, but the documentary evidence does not establish any mutual agreement that Plaintiff would work through December 16, 2008. Rather, the uncontradicted evidence establishes that, as of December 2, 2008, Defendants ordered Plaintiff to have no contact with Boston Scientific customers or employees. Furthermore, Defendants terminated Plaintiffs' computer and telephone access on December 3, 2008. Plaintiff has not provided any evidence to contract these facts. Moreover, there is no indication that Plaintiff did, or was expected to work until December 16, 2008 (or even anytime after December 2, 2008). Merely returning Boston Scientific property cannot be construed as Plaintiff continuing his work as a salesperson. Even in construing all issues of fact in favor of Plaintiff, although Plaintiff was still effectively a Boston Scientific employee until December 16, 2008, there is no evidence that Plaintiff actually "worked" after December 2, 2008. By this time, Plaintiff had already been notified of his termination – the allegedly discriminatory adverse action. Based upon *Parker* and *Wilkerson*, the application of the "last day worked" rule dictates that Plaintiff's ELCRA claim began to accrue on December 2, 2008. Plaintiff's ELCRA claim is barred by the three-year statute of limitations.

    B.    <u>Plaintiff's Tortious Interference Claim:</u>

In Count II of Plaintiff's Complaint, Plaintiff asserts a claim for tortious interference with the business relationship against Berens.

In order to make a establish a *prima facie* case of tortious interference with a business relationship, a Plaintiff must establish:

> (1) the existence of a valid business relationship or expectancy that is not necessarily predicated on an enforceable contract, (2) knowledge of the relationship or expectancy on the part of the defendant interferer, (3) an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and (4) resulting damage to the party whose relationship or expectancy was disrupted.

*Health Call of Detroit v. Atrium Home & Health Care Services, Inc.*, 268 Mich. App. 83, 89-90 (2005). Under Michigan law, a corporate agent, like Berens, can be held liable for tortious interference with a corporation's contracts if "they acted solely for their own benefit with no benefit to the corporation." *Reed v. Mich. Metro Girl Scout Council*, 201 Mich. App. 10, 13 (1993). The statute of limitations for a claim of tortious interference is three years. *See* MCL 600.5805(10); *Blazer Foods, Inc v. Restaurant Properties, Inc*, 259 Mich.App 241, 253 (2003).

Defendants contend that Plaintiff has not established a colorable basis to recover against Berens for tortious interference with a business relationship because: (1) Berens did not act solely for his own benefit; and (2) Plaintiff's claim is time-barred.

The Court need not determine if there exists a question of fact for whether Berens acted solely for his benefit because, like Plaintiff's ELCRA claim, Plaintiff's tortious interference claim is barred by the three-year statute of limitations. "In general, a claim accrues at the time the wrong upon which the claim is based was done, *regardless of when damage results*." *Nelson v. Ho*, 222 Mich. App 74, 85 (1997) (emphasis added). In this case, although Plaintiff's

11

monetary damage resulted at the time of his effective discharge on December 16, 2008, the wrong was done when Plaintiff was notified of his termination on December 2, 2008. There is no factual dispute that Plaintiff learned of his termination on December 2, 2008. Accordingly, Plaintiff's tortious interference claim is time-barred.

      C.      <u>Plaintiff's Fraud and Misrepresentation Claim:</u>

Plaintiff also alleges a claim of fraud and misrepresentation against Berens. To establish a claim for fraud and misrepresentation, a plaintiff must show:

> (1) that the charged party made a material representation; (2) that it was false; (3) that when he or she made it he or she knew it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he or she made it with the intention that it should be acted upon by the other party; (5) that the other party acted in reliance upon it; and (6) that the other party thereby suffered injury.

*Scott v. Harper Recreation, Inc.*, 444 Mich. 441, 446 n. 3 (1993). A claim of fraud must be pled with particularity. MCR 2.112(B)(1).

Defendants contend that Plaintiff has not established a colorable claim of fraud and misrepresentation against Berens because Plaintiff has not pled his claim with the requisite particularity. This Court agrees. In his Complaint Plaintiff fails to identify the statements or representations made by Berens, how those statements or representations were false, how they are material, or how Plaintiff relied on the false statements or representations. Thus, even under the most lenient 12(b)(6) standard of review, Plaintiff's claim for fraud and misrepresentation fails to state a claim upon which relief can be granted.

In his motion to remand, Plaintiff elaborates that Berens made a number of misrepresentations regarding the reasons for Plaintiff's termination. Even if these

representations regarding Plaintiff's job performance were false (although they are more properly categorized as opinions), Plaintiff's damages could not have resulted from *Plaintiff's* reliance on these statements. Plaintiff's fraud and misrepresentation claim can therefore be dismissed for this reason as well.

> D. <u>Plaintiff's Breach of Implied Contract of Employment Against Berens:</u>

Finally, in Count IV of Plaintiff's Complaint, Plaintiff alleges a claim against both Boston Scientific and Berens for breach of an implied contract of employment. Specifically, Plaintiff alleges that Defendants breached an "implied covenant to bargain and/or act in good faith, within the context of the employment relationship between the Plaintiff and the Defendants." (Complaint at ¶ 36).

Plaintiff does not address this claim in his motion to remand, or in his reply to Defendants' response brief. However, Michigan courts have "refused to recognize a cause of action for breach of an implied covenant of good faith and fair dealing in cases involving employment relationships." *Brooks v. Gill Industries, Inc.*, No. 277660, 2008 WL 1914795 at *1 (Mich. App. 2008); *see also Hammond v. United of Oakland, Inc*, 193 Mich.App 146, 152-153; *Fodale v. Waste Management of Michigan, Inc.*, 271 Mich. App. 11, 35 (2006) ("Michigan does not recognize a cause of action for breach of the implied covenant of good faith and fair dealing."). As a result, Plaintiff's breach of implied contract claim against Berens and Boston Scientific fails.

II. <u>Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment.</u>

For the same reasons set forth in Part I, *supra*, Plaintiff has failed to state a claim upon which relief can be granted with respect to each of his claims, regardless if they have been

brought against Boston Scientific or Berens.

CONCLUSION

For the reasons stated above, **IT IS HEREBY ORDERED** that Plaintiff's Motion to Remand (Doc. Entry No. 9) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment (Doc. Entry No. 9) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Complaint is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: June 19, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 19, 2012, by electronic and/or ordinary mail.

S/Jennifer Hernandez
Case Manager

14